IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN SIEGEL, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THERAPYMATCH, INC.,<br><br>Defendant. | Case No. 25-cv-07774-MMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND; VACATING HEARING** |

Before the Court is plaintiff Lauren Siegel's Motion to Remand, filed October 14, 2025. Defendant Therapymatch, Inc. has filed opposition, to which plaintiff has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter appropriate for determination on the parties' respective written submissions,[1] VACATES the hearing scheduled for December 12, 2025, and rules as follows.

In her Complaint, filed in state court August 25, 2025, plaintiff alleges she is a former employee of defendant. According to plaintiff, who seeks to proceed on her own behalf and on behalf of a putative class, defendant, during the course of plaintiff's employment and the employment of putative class members, failed to pay "minimum wages" and "overtime compensation," failed to provide "meal periods" and "rest periods,"

---

[1] Defendant's "Motion to Strike Portions of Plaintiff's Reply in Support of Motion to Remand or, in the Alternative, for Leave to File Sur-Reply," filed November 13, 2025, is hereby DENIED, as the Court, in reaching the decision herein, has not relied on the challenged portions of said Reply.

1  failed to maintain "accurate records of hours worked," failed to indemnify "necessary
2  business expenses," and failed to furnish "accurate wage statements." (See Compl.
3  ¶ 1.)[2]

4  On September 11, 2025, defendant removed the above-titled action, asserting
5  federal jurisdiction exists under the Class Action Fairness Act ("CAFA"). By the instant
6  motion to remand, plaintiff contends defendant cannot establish the requisite amount in
7  controversy, which amount must "exceed[ ] the sum or value of $5,000,000, exclusive of
8  interest and costs." See 28 U.S.C. § 1332(d)(2).[3]

9  "[I]n assessing the amount in controversy, a removing defendant is permitted to
10 rely on a chain of reasoning that includes assumptions." Arias v. Residence Inn By
11 Marriott, 936 F.3d 920, 925 (9th Cir. 2019) (internal quotation and citation omitted).
12 "Such assumptions cannot be pulled from thin air but need some reasonable ground
13 underlying them." Id. (internal quotation and citation omitted). For example, "[a]n
14 assumption may be reasonable if it is founded on the allegations of the complaint." See
15 id.

16 Here, defendant asserts the amount in controversy with respect to plaintiff's claims
17 alleging meal and rest period violations is $14,395,62404, assuming class members
18 experienced a 20% violation rate, i.e., one deprivation of a meal period and one
19 deprivation of a rest period each week. (See Def.'s Opp. at 7:15-26.) As defendant has

---

[2] The parties dispute whether plaintiff and the putative class members are employees or independent contractors. For ease of reference, the Court refers to said individuals as employees.

[3] Plaintiff does not challenge defendant's showing as to the other two jurisdictional requirements of CAFA, and the Court finds those requirements are met. With respect to the requirement that "any member of [the] class of plaintiffs is a citizen of a State different from any defendant," see 28 U.S.C. § 1332(d)(2)(a), defendant has offered evidence that it is a citizen of Delaware and New York (see First Kim Decl., filed September 11, 2025, ¶ 3), and plaintiff, in the Complaint, alleges she is a resident of California (see Compl. ¶ 8). Next, with respect to the requirement that "the number of members of all proposed plaintiff classes in the aggregate is [at least] 100," see 28 U.S.C. § 1332(d)(5)(b), plaintiff alleges the putative class is "estimated to be greater than 100 individuals" (see Compl. ¶ 29.a) and defendant has offered evidence that the number of putative class members is 14,431 (see Second Kim Decl., filed October 27, 2025, ¶ 4).

1  explained, to arrive at such figure, defendant, for each year during the class period,
2  multiplied the number of employees by the average number of weeks worked, and then
3  multiplied the resulting sum by the average hourly rate.  (See id.)

4      The figures used in defendant's calculation are based in part on evidence obtained
5  from its own records, namely:  (1) the number of class members "during the period
6  beginning four years before the filing of the initial complaint and ending when notice to
7  the Class is sent" (see Compl. ¶ 26 (defining putative class)) is 288 in 2021, 1,532 in
8  2022, 4,527 in 2023, 8,279 in 2024, and 10,117 in 2025 (see Second Kim Decl. ¶ 4);
9  (2) the average number of 40-hour weeks worked by putative class members (see
10 Compl. ¶ 46 (alleging "[a]t all times relevant hereto, [p]laintiff and the Class have worked
11 more than eight hours in a workday"); Compl. ¶ 27 (alleging "[p]laintiff and the Class are
12 regularly required to work overtime hours")) is 0.15 in 2021, 0.29 in 2022, 1.55 in 2023,
13 2.46 in 2024, and 2.93 in 2025 (see Second Kim Decl. ¶ 5); and (3) the average hourly
14 rate earned by putative class members, which rate is the amount defendant would owe
15 plaintiff and putative class members for any missed meal and rest periods, see Cal. Lab.
16 Code § 226.7(c) (providing "[i]f an employer fails to provide an employee a meal or rest or
17 recovery period in accordance with a state law, . . . the employer shall pay the employee
18 one additional hour of pay at the employee's regular rate of compensation for each
19 workday that the meal or rest or recovery period is not provided"), is $125.15 (see
20 Second Kim Decl. ¶ 7).

21     The declarant who provided the above-referenced figures is Michael Kim,
22 defendant's "Director, Data Science and Analytics," who has explained defendant's
23 process for maintaining employee records, as well as the manner in which he retrieved
24 those records.  (See id. ¶¶ 2-3.)  Plaintiff has offered no evidence to contradict the
25 showing made as to the number of putative class members, the average number of 40-
26 hour weeks worked, or the average hourly rate.  Under such circumstances, the Court
27 finds defendant's showing as to the number of putative class members, as well as the
28 average 40-hour weeks worked and hourly rate, is reasonable.

1    With respect to a violation rate, the Complaint states defendant "sometimes, but
2 not always," failed to provide meal and rest periods.  (See Compl. ¶¶ 20-21.)  Although
3 such allegation precludes a showing that plaintiff is claiming a 100% violation rate,
4 defendant, as noted, does not base its showing on a 100% violation rate, but, rather, has
5 shown the amount in controversy is established based on the assumption that the
6 violation rate is 20%.
7    In determining how often the meal or rest period violations occur where, as here,
8 the allegation is "sometimes," the Court has considered plaintiff's other descriptions of the
9 claimed violations.  In that regard, plaintiff alleges (1) defendant "maintained a
10 systematic, company-wide policy and practice" of "failing to provide employees with
11 timely and duty-free meal periods" and "timely and duty-free rest periods" (see Compl.
12 ¶¶ 5.b – 5.c), (2) defendant's failure to provide meal and rest periods "was part of a
13 continuous and ongoing pattern of behavior" (see Compl. ¶ 11), and (3) defendant's
14 "policy and practice was to not provide meals periods" and to "not authorize and permit
15 . . . rest periods" (see Compl. ¶¶ 20, 22).
16    In light of such allegations, and keeping in mind that the amount in controversy is
17 "simply an estimate of the total amount in dispute, not a prospective assessment of [the]
18 defendant's liability," see Lewis v. Verizon Communications, Inc., 627 F.3d 395, 400 (9th
19 Cir. 2010), and that "[a]n assertion that the amount in controversy exceeds the
20 jurisdictional threshold is not defeated merely because it is equally possible that damages
21 might be less than the requisite amount," see Arias, 936 F.3d at 927, the Court finds it
22 reasonable to assume plaintiff's reference to "sometimes" encompasses a claim that the
23 violation rate was at least 20%, see Figueroa v. Multi-Color Corp., 2024 WL 3101013, at
24 *4-5 (N.D. Cal. June 24, 2024) (holding, where complaint alleged "general pattern and
25 practice" of not providing meal and rest periods, but not "specific rate" of noncompliance,
26 defendant's assumption of 20% violation rate "reasonable"; citing cases finding 20%
27 violation rate "reasonable" where plaintiff did not specify "frequency" of missed periods);
28 Danielsson v. Blood Centers of the Pacific, 2019 WL 7290476, at *6 (N.D. Cal. December

4

30, 2019) (holding plaintiff's allegation that defendant had "pattern and practice" of failing to provide meal and rest periods supported defendant's assumption of 20% violation rate).

Moreover, as defendant points out, even if the violation rate is assumed to be 10%, i.e. one deprivation of a meal period and one deprivation of a rest period every two weeks, the amount in controversy would still exceed $5,000,000, as, even if the percentage is halved, the amount in controversy would be $7,157,812.02.

Accordingly, the Court finds defendant has made a sufficient showing as to the requisite amount in controversy.[4]

## CONCLUSION

For the reasons stated above, plaintiff's motion to remand is hereby DENIED.

**IT IS SO ORDERED.**

Dated: December 4, 2025

MAXINE M. CHESNEY
United States District Judge

---

[4] In light of the Court's findings regarding the meal and rest period violations, the Court does not address herein defendant's arguments regarding the amount in controversy as to plaintiff's other claims.